United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 29, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

—————————————

No. 04-70054

—————————————

MAURICEO MASHAWN BROWN

      Petitioner-Appellant

v.

DOUGLAS DRETKE, Director, Texas Department of Criminal Justice,
Correctional Institutions Division

      Respondent-Appellee

———————————————
Appeal from the United States District Court
for the Western District of Texas
———————————————

Before WIENER, BENAVIDES, and STEWART, Circuit Judges.

BENAVIDES, Circuit Judge:

Petitioner Mauriceo Mashawn Brown was convicted in Texas state court of capital murder and sentenced to death. Subsequently, Brown filed a petition for habeas corpus relief in a federal district court, which denied the petition and declined to issue a certificate of appealability ("COA") on any issue. Brown now requests this court to grant a COA pursuant to 28 U.S.C. § 2253(c)(2). For the reasons that follow, Petitioner's Application for a Certificate of Appealability is denied.

## I. BACKGROUND

On August 15, 1996, Brown, Kenneth Foster, DeWayne Dillard,

1

and Julius Steen perpetrated a series of armed robberies which ultimately led to the fatal shooting of Michael LaHood, Jr. According to evidence presented at trial, the four men had been together, smoking marijuana, and driving around San Antonio in a vehicle driven by Foster. In the early morning hours of August 15, Brown suggested, and the others agreed, to look for individuals to rob. After they robbed four individuals in two separate incidents, Foster began following a pair of vehicles that ultimately stopped at the LaHood residence. Foster had begun to turn the car around to exit the unfamiliar neighborhood, when Mary Patrick exited one of the two vehicles Foster had been following and confronted the occupants of the vehicle that had been following her. After the brief confrontation, Patrick and Michael LaHood, who had been driving the second followed vehicle, began walking toward the entrance to the LaHood residence. Brown subsequently exited the car and walked up to LaHood with a gun in hand. According to Patrick, Brown demanded LaHood's keys, pointed the gun at LaHood's face, and shot. LaHood died as a result.

A jury subsequently found Brown and Foster guilty of capital murder and sentenced Brown to death. Brown appealed his conviction to the Texas Court of Criminal Appeals, which affirmed the judgment of the trial court. In December of 1998, Brown filed an application for state habeas corpus relief. After a lengthy evidentiary hearing, the state habeas court denied

relief.  Brown then filed a petition for habeas corpus relief in federal district court.  The district court denied relief and declined to issue a COA.

Brown now asks this Court to grant a COA and raises several grounds for relief:  (1) the trial court's failure to sever Brown's trial from that of his co-defendant (Grounds 1 and 6); (2) his trial counsel's ineffective assistance (Grounds 2 and 3); (3) the trial court's limitation of cross-examination of prosecution witness Mary Patrick (Ground 4) ; (4) the trial court's admission of unadjudicated criminal conduct during the punishment phase of trial (Ground 5); and (5) the adjudication of his state habeas application by a judge who did not preside over the trial or a portion of the state habeas hearing (Ground 7).

## II. STANDARD FOR GRANTING A CERTIFICATE OF APPEALABILITY

Brown filed his § 2254 petition for a writ of habeas corpus after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA").  The petition, therefore, is subject to the requirements, restrictions, and standards imposed by AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).

Under AEDPA, a petitioner must obtain a COA before he can appeal the district court's denial of habeas relief.  *See* 28 U.S.C. § 2253(c); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("[U]ntil a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from

3

habeas petitioners.").

> The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits. We look to the District Court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason. This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it.

*Miller-El*, 537 U.S. at 336.

A COA will be granted only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. Where the district court has denied claims on procedural grounds, a COA should issue only if it is demonstrated that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Miller-El*, 537 U.S. at 342. "Indeed, a claim can be debatable even though every jurist of

4

reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id.* at 338. Moreover, "[b]ecause the present case involves the death penalty, any doubts as to whether a COA should issue must be resolved in [petitioner's] favor." *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).

We further note that when reviewing the district court's assessment, we must be mindful of the deferential standard of review of 28 U.S.C. § 2254(d). Under § 2254(d), a federal court cannot grant habeas corpus relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). With respect to the review of factual findings, AEDPA significantly restricts the scope of federal habeas review. Factual findings are presumed to be correct, and a petitioner has the burden of rebutting this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. ANALYSIS

### A. Non-Severance of Brown's Jury Trial

5

In his first and sixth grounds for relief, Brown contends that the trial court erred in refusing to sever Brown's trial from that of his co-defendant, Kenneth Foster. This, according to Brown, resulted in (1) the jury being unable to render an individualized sentencing determination in violation of the Eighth Amendment and (2) a violation of his Sixth Amendment right to confront witnesses against him.

The district court found that Brown had failed to exhaust these claims before the state court and declined relief. As discussed below, the district court's ultimate resolution was one which reasonable jurists could not debate.

Before seeking federal habeas relief, a state prisoner must exhaust available state remedies. 28 U.S.C. § 2254(b)(1). The exhaustion requirement is not met if the petitioner presents legal theories or factual claims in his federal habeas petition that were not asserted in his state application. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983). Also, the petitioner must have reasonably alerted the state courts to the federal nature of the claim. *Wilder v. Cockrell*, 274 F.3d 255, 260 (5th Cir. 2001); *Anderson v. Harless*, 459 U.S. 4, 6-7 (1982).

### 1. Sixth Amendment Severance Claim

We first address Brown's Sixth Amendment claim and conclude that it was not properly exhausted in state court. While Brown did assert a similar claim in his state habeas proceeding, that

6

claim was based entirely on Article 36.09 of the Texas Rules of Criminal Procedure. Brown did not mention the Sixth Amendment. Neither did Brown discuss any federal case law in support of his complaint. *See Harless*, 459 U.S. at 6 ("It is not enough that . . . a somewhat similar state-law claim was made."). Thus, the state court was not reasonably alerted to the possibility that petitioner wished to assert a Sixth Amendment complaint regarding the trial court's failure to sever, and Brown's current Sixth Amendment claim was unexhausted in state court. Reasonable minds could not debate that, under AEDPA, the district court was correct in declining to grant federal habeas relief on Brown's claim. *See* 28 U.S.C. § 2254(b)(1)(A).

2. Eighth Amendment Severance Claim

We now turn to Brown's Eighth Amendment-based claim regarding the trial court's failure to sever his trial from Kenneth Foster's trial. The district court erroneously believed that Brown had failed to assert such a claim in his state habeas application. However, a review of Brown's state habeas application reveals that Brown raised an Eighth Amendment-based claim similar to the one he raised in the district court. In his state habeas application, he argued that the trial court's failure to sever his trial from Foster's may have allowed the jury to believe that it had to impose the death penalty on Brown, the triggerman, because it had imposed the death penalty on

7

Foster, the less-culpable non-triggerman.  Further, he claimed that the non-severance may have caused the jury to have difficulty remembering which evidence applied to each defendant. These consequences of non-severance, he argued, violated the Eighth Amendment's requirement of "precise and individualized sentencing" in death penalty cases. *See Stringer v. Black*, 503 U.S. 222, 232 (1992).

Brown again raised an Eighth Amendment claim in his federal petition.  He argued that the jury was "overwhelmed[] and frightened by the violent persona of Kenneth Foster while they were trying to decide Mr. Brown's fate."  In support, Brown submitted several affidavits from jury members that were never presented to the state habeas court.  Arguably, the evidence and theory behind Brown's Eighth Amendment claim before the federal habeas court was sufficiently different from that presented to the state court to render his claim unexhausted.  However, even assuming that his claim was properly exhausted, we conclude that the district court's ultimate denial of relief on this claim was proper and undebatable.

The United States Supreme Court has declined to mandate severance any time co-defendants have conflicting defenses.  *See Zafiro v. United States*, 506 U.S. 534, 538-39 (1993).  Often, rather than sever a defendant's trial from that of a co-defendant, the trial court may simply provide a limiting

instruction to cure any risk of prejudice. *Id.* at 539. The mere fact that co-defendants have "mutually antagonistic defenses" does not require the trial court to sever the case. *Id.* at 538. Severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539.

The state habeas court found that the trial court had properly exercised its discretion in denying Brown's request for severance and found that Brown had presented no evidence to the trial court showing undue prejudice. Rather, the jurors were repeatedly warned to consider the evidence in relation to the defendant for or against whom it was admitted. Before reading the punishment charge to the jurors, the trial court reminded jurors that they were deliberating two separate causes and two separate charges, and that the special issues submitted with both charges differed.

Not only was any prejudice from trying the two cases together cured by these warnings and instructions, but it is unlikely that the evidence admitted against Foster could have prejudiced Brown when Brown's own record provided substantial evidence of future dangerousness. The jury heard evidence of Brown's gang affiliations; evidence of possession and sale of a pipe-bomb to an undercover officer; evidence that Brown had

9

previously attempted to break into a vehicle; and evidence that he had participated in armed robberies on the night of LaHood's murder. Accordingly, Brown has not shown that "there [was] a serious risk that a joint trial . . . compromise[d] a specific trial right . . . or prevent[ed] the jury from making a reliable judgment about guilt or innocence." *Id.* Thus, reasonable jurists would not disagree with the district court's ultimate denial of habeas relief on this issue.

## B. Ineffective Assistance of Counsel

In his second and third grounds for relief, Brown contends that the district court's resolution of his ineffective assistance of counsel claim was incorrect. He bases this argument on two grounds. First, he argues that the district court incorrectly applied the rule of *Strickland v. Washington*, 466 U.S. 668, 695-96 (1984), in failing to sua sponte aggregate the prejudicial effect of each of the nine alleged instances of deficient performance. Second, he argues that, contrary to the district court's findings, his trial counsel's preparatory investigation of Brown's case was deficient. We find that reasonable jurists would not debate the district court's resolution of these issues.

### 1. Aggregation Under *Strickland*

Brown's first argument rests on a misunderstanding of footnote 113 of the district court opinion. There, the district

10

court noted that Brown had alleged fewer incidents of allegedly inappropriate conduct in his federal petition than he had in his state application for habeas relief.  Consequently, the instances alleged in state court but not in federal court, which included repeated late arrivals to court, derogatory comments about Brown during closing arguments, inappropriate attire, and receipt of cellular phone calls during trial, were not properly before the district court in its adjudication of the ineffective assistance of counsel claim.  The district court noted, "While this Court does not condone trial counsel's behavior, nor the state trial court's apparent acquiescence, petitioner did not present this Court with a similar broad-based, claim for relief herein asserting that his trial counsel's overall performance was objectively unreasonable."

Brown has construed the footnote to evidence the trial court's failure to consider the totality of the evidence as required by *Strickland*, 466 U.S. at 695, in determining the prejudicial effect of trial counsel's allegedly deficient performance.  *See Strickland*, 466 U.S. at 687 (requiring a claimant to show both deficient performance and prejudicial effect to succeed in an ineffective assistance of counsel claim). He claims that the district court should have considered all of the alleged instances of deficient performance in the aggregate to determine whether the prejudice prong of the *Strickland* test

11

was met.

This argument is flawed in three ways. First, the district court's footnote does not necessarily indicate that the district court did not consider the totality of the circumstances in resolving Brown's ineffective assistance of counsel claim. Rather, it simply indicates that the district court did not consider evidence that was not properly before it, either individually or in the aggregate, in resolving Brown's claim. Second, Brown has not referred to any case that requires a district court to sua sponte aggregate the prejudicial effect of all alleged instances of deficient performance in resolving the second prong of the *Strickland* test. Brown's reliance on *Strickland*'s requirement that "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury," *id.* at 695, is unpersuasive. As is apparent from the discussion in *Strickland*, the "totality of the evidence" refers to the type and weight of the evidence in favor of and against the defendant at trial. Thus, to consider the "totality of the evidence" means that a reviewing court must examine the prejudicial effect of any alleged deficiency in light of the strength or weakness of the prosecution's case against the defendant. *See id.* at 695-96 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.").

12

The Court in *Strickland* in no way instructed courts to sua sponte aggregate the prejudicial effect of all alleged deficiencies urged by the claimant. Third, Brown's concern over the aggregation of prejudicial effects is moot in light of the fact that the district court had already determined that Brown had not shown deficient performance, as required by the first prong of the test. *Id.* at 687 ("Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."). Thus, Brown has failed to show that the district court misapplied the rule of *Strickland* such that reasonable jurists would disagree with the district court's resolution of Brown's ineffective assistance of counsel claim.

2. Sufficiency of Trial Counsel's Investigation

Brown also argues that the district court erred in determining that trial counsel's pre-trial investigation was sufficient under the Sixth Amendment. Brown specifically claims that trial counsel was deficient in failing to (1) interview all of the witnesses on the government's witness list, including Mary Patrick, who had originally told police that Dillard, not Brown, was the shooter, (2) interview Brown sufficiently, and (3) explore the possibility that Brown was not the shooter. We find that reasonable jurists would not disagree with the district court's denial of relief on these claims.

13

Claims of ineffective assistance of counsel are reviewed under the two-prong test of *Strickland v. Washington*, 466 U.S. at 684-86. Under that test, a petitioner must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Id.*

To satisfy the first prong of the *Strickland* test, the petitioner must show that counsel's conduct falls beyond the bounds of prevailing, objective professional standards. *Id.* at 688. However, there is a presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

Under the second prong, the petitioner must show that, as a result of counsel's errors, his trial was rendered unfair or unreliable, i.e., petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Williams v. Taylor*, 529 U.S. 362, 391 (2000) (citing *Strickland*, 466 U.S. at 694.)

The district court found that neither prong of the *Strickland* test was met. First, the evidence before the state habeas court and the district court did not show deficient performance. While neither trial counsel nor trial counsel's investigator interviewed any of the prosecution witnesses prior to trial, trial counsel reviewed all of the witness statements in the prosecution's case file. In addition, by Brown's own

14

admission, his trial counsel attempted to locate and make contact with prosecution witness Mary Patrick but was unsuccessful. The district court also found that trial counsel had met with Brown several times, but Brown had given trial counsel no reason to explore the possibility that someone other than Brown was the shooter. Rather, Brown consistently told his trial counsel that he was the shooter. Thus, Brown cannot now challenge the decision not to investigate the possibility of a different shooter as unreasonable. *Strickland*, 466 U.S. at 691 ("[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless. . ., counsel's failure to pursue those investigations may not later be challenged as unreasonable.").

Second, Brown failed to show that he suffered prejudice from trial counsel's allegedly deficient investigation. Brown presented no evidence showing that Mary Patrick or any other witness could have provided trial counsel with any helpful information otherwise inaccessible. *See Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998). Nor did Brown identify any source of testimony, other than himself and Patrick, which would show that Brown was not the shooter. Accordingly, the district court declined to grant relief.

In light of the evidence presented, reasonable jurists would not disagree with the district court's resolution of Brown's

15

ineffective assistance of counsel claim.

### C. Limitations on Cross-Examination of Mary Patrick

Brown's fourth ground for relief alleges that the trial court violated his Sixth Amendment right of confrontation by limiting cross-examination of Mary Patrick regarding her marital status. During Brown's trial, both Brown and Foster cross-examined Mary Patrick. Brown and Foster were able to elicit information detrimental to Patrick's credibility, including the facts that Patrick had originally identified someone other than Brown as the shooter; that she had provoked the confrontation with the men in the car; that she failed to include in her police statement that the shooter had worn a bandana over his face; and that she had been drinking that night. However, Brown wished to question Patrick regarding her marital status. Brown hoped to call into question Patrick's credibility by eliciting two pieces of information: (1) while a detective was questioning her immediately after LaHood's shooting, Patrick told the detective that she wished to speak to her husband, Kenneth Mox; and (2) in a later affidavit unrelated to the case at bar, Patrick had said she was married to Scott Rarick and had never been married to Kenneth Mox. However, the district court denied Brown permission to continue with such questioning.

As explained by the district court, the Confrontation Clause of the Sixth Amendment guarantees the right of the accused in a criminal proceeding to be confronted with the witnesses against

16

him.  *Delaware v. Van Arsdall,* 475 U.S. 673, 678 (1986).  Thus, a criminal defendant has a constitutional right to cross-examine a prosecution witness and thereby expose any information relating to the reliability of the witness.  *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974).  However, the right to cross-examine allows the defendant "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  *Pennsylvania v. Ritchie*, 480 U.S. 39, 53 (1987)(quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)(emphasis in original).  Trial judges may impose limits on cross-examination based on concerns about harassment, prejudice, confusions of the issue, the witness's safety, and interrogation that is repetitive or only marginally relevant.  *Van Arsdall*, 475 U.S. at 679.

The district court denied relief on Brown's claim, reasoning that even if Brown were able to elicit the information he hoped to elicit, inconsistencies in Patrick's representations about her marital status were only marginally relevant.  Brown presented no evidence to the trial judge to indicate that Patrick had lied in her affidavit.  Additionally, there was no evidence that Patrick intended to make any representation about her marital status by asking to be given a moment to speak to someone during a very stressful and emotional time.

In any event, Brown failed to show that the alleged error

17

was anything but harmless error.  *See id.* at 684 (stating that an erroneous limitation on cross-examination is subject to harmless error analysis).  In light of the substantial evidence against Brown, the extensive amount of testimony elicited from Patrick and other witnesses tending to damage Patrick's credibility, and the marginal relevance of Patrick's marital status, there is no likelihood that "the error had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotations omitted).  Accordingly, we find that reasonable jurists would not debate the district court's resolution of Brown's fourth ground for relief.

### D.  Admission of Unadjudicated Criminal Condcut

In his fifth ground for relief, Brown argues that the trial court's admission of unadjudicated criminal conduct during the punishment phase of trial violated his constitutional rights.  During the punishment phase of Brown's trial, the prosecution presented evidence showing that he had previously sold a pipe-bomb to an undercover police officer, participated in a break-in of a car in a parking garage, and participated in the armed robbery of an individual just days before the crime in question.  The district court declined to grant relief on this claim, and we find that reasonable jurists would not debate that outcome.

A federal court may grant habeas relief based on an

18

erroneous state court evidentiary ruling only if the ruling violates a specific federal constitutional right or is so eggregious such that it renders the petitioner's trial fundamentally unfair. *See Wilkerson v. Cain,* 233 F.3d 886, 890 (5th Cir. 2000); *Castillo v. Johsnon*, 141 F.3d 218, 224 (5th Cir. 1998). The district court found that Brown failed to show a violation of a specific constitutional right or an error of such magnitude to render the trial unfair. We agree with the district court's resolution of this issue and find that reasonable jurists would not debate that decision.

As correctly explained by the district court, there is no constitutional prohibition on the introduction at a trial's punishment phase of evidence showing that the defendant has engaged in extraneous, unadjudicated, criminal conduct. Rather, this Circuit has held that the "admission of unadjudicated offenses in the sentencing phase of a capital trial does not violate the eighth and fourteenth amendments." *Williams v. Lynaugh*, 814 F.2d 205, 208 (5th Cir. 1987); *see also Muniz v. Johnson*, 132 F.3d 214, 224 (5th Cir. 1998). Neither does the U.S. Constitution require, as urged by Brown, that unadjudicated extraneous offenses be proved beyond a reasonable doubt for evidence of those offenses to be admitted at trial. *Vega v. Johnson*, 149 F.3d 354, 359 (5th Cir. 1998); *Turner v. Johnson*, 106 F.3d 1178, 1189 (5th Cir. 1997). Accordingly, the district

19

court declined to adopt a contrary rule of constitutional law, citing *Teague v. Lane*, 489 U.S. 288 (1989), which precludes federal courts from adopting a new rule of constitutional law in habeas proceedings.

Brown has also failed to show that the state trial court violated state law so as to render his trial fundamentally unfair. *See Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999)("In habeas actions, we do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding."). Brown's claim that the state trial court violated Texas law by admitting evidence of prior unadjudicated offenses without proof beyond a reasonable doubt is meaningless absent evidence that his trial was thereby rendered unfair in violation of the Constitution. Brown presented no evidence to the district court showing that there was a "reasonable probability that the verdict might have been different had the trial been properly conducted." *Guidroz v. Lynaugh*, 852 F.2d 832, 835 (5th Cir. 1988)(quoting *Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988)). *See also Harris v. Johnson*, 81 F.3d 535, 541 (5th Cir. 1996) ("We previously have held that the use of evidence of unadjudicated extraneous offenses, at the sentencing phase of Texas capital murder trials, does not implicate constitutional concerns.").

Under these circumstances, we find that reasonable jurists would not debate the district court's denial of relief on Brown's fifth claim.

### E. State Habeas Judge's Findings and Conclusions

In his final claim for relief, Brown argues that his due process rights were violated by the original state habeas judge's failure to recuse himself until after the state habeas hearing, which resulted in the findings of fact and conclusions of law being made by the substituting judge, who was not present for trial or the state habeas hearing. The district court denied relief on this claim, and we find that reasonable jurists would not debate that resolution.

During the state habeas hearing, Judge Sam Katz, who was presiding over Brown's state habeas proceedings, advised all parties on the record that months prior to the hearing, he had taken out a loan to pay off campaign debts and that one of the two attorneys who signed as guarantors of the note was Michael LaHood, Sr., the father of the murder victim. Brown subsequently filed a motion for recusal, which was referred to Judge Michael Curry for evidentiary hearing.

At that hearing, LaHood, Sr., testified that he signed as guarantor of the Judge's loan for $5,000 shortly after election but before taking office. He also testified that he had served as a guarantor for other attorneys in the past, had never discussed Brown's case with Judge Katz, and had no financial

21

interest in the outcome of Brown's habeas proceeding. Judge Curry denied Brown's motion to recuse Judge Katz.

Six months later, upon invitation from Judge Katz, Brown's habeas counsel filed another motion for recusal. This second motion was based on Judge Katz's conduct during a hearing held on May 12, 2000, in which Judge Katz berated Brown's state habeas co-counsel for allegedly accusing Judge Katz of bias and financial improprieties in connection with Brown's state habeas proceeding. However, before the resulting recusal hearing had concluded, Judge Katz entered an order recusing himself in Brown's habeas proceeding.

Judge James Barlow then became the presiding judge in Brown's state habeas proceeding. He allowed the parties to supplement the evidence already presented to Judge Katz. However, Judge Barlow declined to allow the parties to re-present all the testimony that had previously been presented to Judge Katz, advising the parties that he would review the record from Brown's trial and the record of the state habeas proceeding before issuing findings of fact and conclusions of law.

In his federal habeas petition, Brown argued that Judge Barlow's factual findings deserved no deference because they were impermissibly entered by a judge who did not preside over Brown's trial or the state habeas hearing. The district court found this claim to be unexhausted in state court and therefore inappropriate for federal habeas review under AEDPA. See 28

22

U.S.C. § 2254(b)(1). However, it based its conclusion on an incomplete record which did not include a motion filed by Brown in the state habeas court objecting to the state habeas proceeding. From the supplemented record now before us, it is clear that Brown did raise a claim in his state habeas proceeding challenging Judge Barlow's refusal to re-hear evidence and moving for a new hearing.

Nonetheless, Brown's argument raises no basis for federal habeas corpus relief. Brown fails to make any argument as to how the state habeas proceedings violated his due process rights but instead makes conclusory statements to that effect. Apart from his failure to point to any relevant authority in support of his constitutional claim, Brown does not refer us to any authority or precedent suggesting that a presiding judge's use of evidence heard by a previously recused judge is illegal under federal or state law. We also note that Brown makes no argument and points to no authority or precedent to support a conclusion that Judge Katz's initial failure to recuse was illegal based on federal or state law.[1] In any event, as correctly noted by the district

---

[1]Had Brown's claim for relief been based on Judge Katz's initial failure to recuse, the exhaustion doctrine would bar consideration of that claim in federal court under 28 U.S.C. § 2254(b)(1) because Brown did not present such a claim to the state habeas court. Brown's challenge to his state habeas proceeding, as contained in the motion for a new habeas hearing submitted to the state habeas court, was based solely on the findings of fact and conclusions of law being entered by a judge not present at Brown's trial or state habeas proceeding. Brown did not make any argument as to the propriety of Judge Katz presiding over the habeas hearing. Thus, Brown did not "fairly present" that claim to the state habeas court such that this or any other federal court could adjudicate that claim. *See Anderson v. Harless*, 459 U.S. 4, 6-7 (1982)

23

court, we have previously held that alleged infirmities in state habeas proceedings are not grounds for federal habeas relief. *See, e.g., Moore v. Dretke*, 369 F.3d 844, 846 (5th Cir. 2004); *Beazley v. Johnson*, 242 F.3d 248, 271 (5th Cir. 2001); *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995). Because Brown's claim does not allege any recognized basis for relief, reasonable jurists would not debate the district court's denial of relief on this claim.

## IV. Conclusion

Petitioner has not shown that reasonable jurists could disagree with the district court's denial of any of his claims, nor could jurists conclude that any of Petitioner's claims deserve encouragement to proceed further. Accordingly, we deny Petitioner's Application for a Certificate of Appealability.

---

(holding that for purposes of exhaustion "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts," but rather "the habeas petitioner must have 'fairly presented' to the state courts the 'substance' of his federal habeas corpus claim").