United States Court of Appeals
Fifth Circuit

**F I L E D**

July 3, 2007

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

No. 05-70057

ARTURO DIAZ,

Petitioner-Appellant,

VERSUS

NATHANIEL QUARTERMAN, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee.

Appeal from the United States District Court
for the Southern District of Texas
(7:04-CV-00225)

Before JONES, Chief Judge, and WIENER and DeMOSS, Circuit Judges.

PER CURIAM:[*]

This is a death penalty case in which Petitioner Arturo Diaz appeals the district court's denial of federal habeas relief. The facts of Diaz's underlying capital offense are detailed in this Court's opinion of April 11, 2007. *See Diaz v. Quarterman*, No.

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

05-70057, 2007 WL 1112044, at *1-*3 (5th Cir. Apr. 11, 2007). In summary, Diaz brutally stabbed one man to death and attempted to stab another man to death in the course of robbing the two men. He was convicted by a Texas jury of capital murder, attempted capital murder, and aggravated robbery, and he was sentenced to death. He unsuccessfully pursued an appeal with the Texas Court of Criminal Appeals. He also unsuccessfully pursued habeas relief with that court. In 2004, he filed a federal habeas petition in the U.S. District Court for the Southern District of Texas. That court denied relief on all of Diaz's claims and declined to issue a Certificate of Appealability (COA). He then filed an appeal with this Court and requested a COA on seven issues. This Court certified for appeal one issue presented by Diaz: whether trial counsel rendered ineffective assistance during the punishment phase of trial by failing to adequately investigate and present readily available mitigating evidence. *See id.* We now affirm the district court's denial of habeas relief.

## I. Facts Relating to Counsel's Investigation and Presentation of Mitigating Evidence

### A. Punishment Phase of Trial

The trial record shows that the only witness offered by the defense at the punishment phase of trial was a psychologist appointed by the court to evaluate Diaz. The psychologist, Dr. Pinkerman, testified that Diaz had a history of head trauma; an IQ

2

of 89; some cognitive disabilities, which may have stemmed from prolonged alcohol or substance abuse; and an early history of behavior that indicated a propensity for delinquency and adult criminal behavior. On cross, the State introduced Dr. Pinkerman's written report into evidence over defense's objection. The report included Dr. Pinkerman's conclusions that Diaz "approached the assessment in somewhat of an exaggerated manner which may reflect an inability to cooperate with the testing or malingering in an attempt to present himself with the false claim of mental illness"; that Diaz was not mentally ill; and that Diaz's profile matches that of Type C offenders, whom Dr. Pinkerman described as the most difficult criminal offenders -- those who are distrustful, cold, irresponsible, and unstable. During closing arguments, defense counsel referenced as mitigating evidence that Diaz was married with a five-year-old daughter, had grown up with his grandmother, had learning disabilities, and had strong feelings of guilt and depression. No other mitigating evidence was presented.

**B. State Habeas Court**

Regarding the issue certified for appeal, the state habeas court found the following:

> Although Applicant's argument . . . that he was denied effective assistance of counsel based on trial counsel's alleged failure to present sufficient mitigating evidence claims that some of Applicant's family members were available and willing to testify on his behalf at the punishment phase, . . . Applicant does not provide any specifics concerning which family members were allegedly willing to testify on his behalf.

3

In particular, he does not name said individuals, give their relationship to Applicant, or explain why he now claims that they had expressed a willingness to testify.

Nor does Applicant attach any type of affidavit or other form of factual support for his claim that some of his family members would have been willing to testify.

He likewise does not, in any way, suggest what the testimony of his family members would have been.

. . . .

Trial attorneys Rogelio Garza and Daniel R. Reyes have provided credible information that two of Applicant's family members had been present during the punishment phase of trial; that they had, however, refused to be called to testify; and that Applicant had not wanted them to call his family members to testify.

Said attorneys have likewise given credible testimony, by affidavit, indicating that they had made their decision concerning this topic based on their trial strategy; that they had conferred with Applicant before doing so; and that Applicant had agreed with said decision.

Mr. Garza and Mr. Reyes have further provided credible affidavit testimony that they had presented all to [sic] the mitigation evidence which they had had available to them; that their decisions concerning use of said evidence, including Dr. Pinkerton's testimony, had been based on their trial strategy; that they had conferred with Applicant before making said decision; and that Applicant had been in agreement with their decision.

*Ex parte Diaz*, No. CR-1464-99-G(1), paras. 1201-1204, 1208-1210 (370th Dist. Ct., Hidalgo County, Tex. Apr. 23, 2003) (proposed order containing findings of fact, conclusions of law, and a recommendation). Based on these findings, the court concluded that Diaz was not entitled to habeas relief on the claim at issue here.

### C. Federal Habeas Court

4

When Diaz filed his petition with the district court, he attached a series of affidavits in support of his argument that counsel had provided ineffective assistance at the punishment phase of trial. The affiants included his grandmother, his mother, one of his sisters, a cousin, and a childhood teacher. All of the affiants described Diaz's difficult childhood and swore that they would have testified on Diaz's behalf if asked. The district court, adopting the report and recommendation of the magistrate judge, determined that Diaz was not entitled to habeas relief on this ground because Diaz could not prove that counsel's performance prejudiced his defense. According to the court, the evidence of Diaz's "childhood privations" paled in comparison to the evidence presented to the jury: "That Diaz committed an extremely violent murder, attempted murder, and aggravated robbery; that Diaz committed a prior unadjudicated homicide; and that Diaz committed numerous, and sometimes violent, acts of misconduct while in the county jail during his pretrial detention." *Diaz v. Dretke*, No. M-04-225, at 17-18 (S.D. Tex. Aug. 19, 2005) (Magistrate Judge's report and recommendation). Accordingly, the court denied Diaz habeas relief, holding that there was not a reasonable probability that the evidence of Diaz's childhood would have persuaded the jury to impose a different sentence. We issued a COA on this issue and now address Diaz's appeal.

## II. Discussion

5

Diaz's appeal is governed by a familiar standard of review: we review the district court's findings of fact for clear error and its conclusions of law de novo. *See Martinez v. Quarterman*, 481 F.3d 249, 253 (5th Cir. 2007). Because Diaz filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), we are bound by AEDPA's various requirements, *see id.* (citing *Lindh v. Murphy*, 521 U.S. 320, 336 (1997)), including the requirement that we not grant habeas relief unless the state court's adjudication of petitioner's claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, we must presume "a determination of a factual issue made by [the] State court . . . to be correct" unless the petitioner rebuts the presumption by clear and convincing evidence. § 2254(e)(1).

The sole issue certified for appeal is whether Diaz's trial counsel rendered ineffective assistance during the punishment phase of trial by failing to adequately investigate and present readily available mitigating evidence. Under *Strickland v. Washington*, 466 U.S. 668, 684-86 (1984), a defendant's Sixth Amendment right to counsel includes the right to the effective assistance of counsel. A defendant has not received his constitutionally guaranteed right

to effective assistance of counsel if counsel's performance was deficient and the defendant was prejudiced thereby. *Id.* at 687. Counsel's performance is deficient if it falls below an objective standard of reasonableness, as measured by prevailing professional norms, *see id.* at 688; and counsel's deficient performance prejudices the defendant's case "only if, but for counsel's errors, there is a reasonable probability that the final result would have been different and confidence in the reliability of the verdict has been undermined," *Leal v. Dretke*, 428 F.3d 543, 548 (5th Cir. 2005). Failure to prove either deficient performance or prejudice will defeat an ineffective assistance of counsel claim. *Id.* In the context of the punishment phase of trial, the Supreme Court has indicated that prevailing professional norms require counsel to investigate thoroughly the defendant's background, including his "medical history, educational history, employment and training history, family and social history, prior adult and juvenile correctional experience, and religious and cultural influences." *Wiggins v. Smith*, 539 U.S. 510, 524 (2003) (quoting ABA GUIDELINES FOR THE APPOINTMENT AND PERFORMANCE OF COUNSEL IN DEATH PENALTY CASES 11.4.1(C), at 93 (1989)).

Petitioner Diaz argues that counsel's performance was constitutionally deficient because counsel did not "review, investigate, or even attempt to introduce evidence" of the type required under *Wiggins*. Diaz contends that counsel could have

7

obtained *Wiggins*-type evidence by speaking to his family members, who were "ready, willing, and able to testify." Further, Diaz argues that counsel's performance prejudiced his defense because if counsel had interviewed his family members, counsel would have discovered evidence of an unstable and deprived childhood, poverty and neglect, violence and instability, a lack of male role models, abandonment, and self-mutilation. He presents affidavits from four family members and one childhood teacher evidencing the above, the same affidavits offered in support of his federal habeas petition. Respondent Quarterman's response is three-fold: (1) Diaz's affidavits should be excluded because they were not presented to the state court and are therefore "unexhausted"; (2) counsel's performance was not deficient because he was following Diaz's instruction not to call any family members as mitigation witnesses; and (3) counsel's performance was not prejudicial because the anticipated testimony was weak and Diaz would not have permitted the evidence to be admitted anyway.

As stated above, the state habeas court determined that Diaz had not provided "any specifics concerning which family members were allegedly willing to testify," nor attached "any type of affidavit or other form of factual support for his claim that some of his family members would have been willing to testify," nor suggested "what the testimony of his family members would have been." It also determined that Diaz's trial counsel had provided

8

"credible information that two of [Diaz]'s family members had been present during the punishment phase of trial, that they had . . . refused to be called to testify, and that [Diaz] had not wanted [counsel] to call his family members to testify." Finally, the court determined that Diaz's trial counsel had provided "credible affidavit testimony" that their decisions relating to the presentation of mitigating evidence were based on "trial strategy." Pursuant to AEDPA, we must presume these factual determinations to be correct absent clear and convincing evidence to the contrary. The only evidence Diaz offers to rebut the state court's findings is the series of affidavits presented for the first time to the district court. Regardless of whether these affidavits are "unexhausted" per 28 U.S.C. § 2254(b)(1), as the State contends, we cannot consider them per § 2254(e)(2) as they comprise "new evidence" that was not properly presented to the state court, and they do not evidence a factual predicate that could not have been discovered through the exercise of due diligence. *See Roberts v. Dretke*, 356 F.3d 632, 641 (5th Cir. 2004). Without the affidavits, Diaz has failed to rebut the presumption of correctness that attaches to the state court's findings, and he cannot make his case that counsel were constitutionally ineffective at the punishment phase of trial. The finding that Diaz did not want his family members to testify precludes both a finding of deficient performance and a finding of prejudice. *See Dowthitt v. Johnson*,

9

230 F.3d 733, 748 (5th Cir. 2000) ("Counsel will not be deemed ineffective for following their client's wishes, so long as the client made an informed decision."); *see also Schriro v. Landrigan*, 127 S. Ct. 1933, 1941 (2007) ("If [defendant instructed his counsel not to offer any mitigating evidence], counsel's failure to investigate further could not have been prejudicial under *Strickland*."). A finding of prejudice is also precluded by the state court's determination that Diaz presented nothing to evidence what his attorneys could have found if they had investigated his background. A petitioner cannot show prejudice with respect to a claim that counsel failed to investigate and present mitigating evidence without adducing what the investigation would have shown. *See Strickland*, 466 U.S. at 696 (recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different"). Accordingly, the state court's denial of relief was in line with *Strickland* and its progeny, and Diaz is not entitled to federal habeas relief.

### III. Conclusion

For the reasons stated above, we AFFIRM the district court's denial of habeas relief.

10