# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 16, 2010

No. 10-70003

Lyle W. Cayce
Clerk

VIRGILIO MALDONADO,

Petitioner - Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

Appeal from the United States District Court
for the Southern District of Texas
U.S.D.C. Civ. No. H-07-2984

Before KING, STEWART, and HAYNES, Circuit Judges.

PER CURIAM:[*]

We withdraw our prior panel opinion, issued on August 10, 2010, and substitute the following.

In 1997, a Texas jury convicted and sentenced to death petitioner–appellee Virgilio Maldonado for the murder of Cruz Saucedo in the course of a robbery in 1995. State appellate courts affirmed the conviction and sentence and denied post-conviction relief. Maldonado brought a federal habeas petition under the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-70003

Aniterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. The district court denied relief and denied a certificate of appealability (COA). Maldonado now seeks a COA for some of the claims he unsuccessfully raised in the district court. For the reasons explained below, we grant Maldonado's application for a COA on the issue of whether he is mentally retarded, rendering him ineligible for the death penalty under *Atkins v. Virginia*, 536 U.S. 304 (2002). Maldonado's application for a COA as to all other claims is denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The district court's exhaustive opinion more than adequately documents the factual background and procedural development of this case. *See Maldonado v. Thaler*, 662 F. Supp. 2d 684, 689–93 (S.D. Tex. 2009). Here, we recite only so many of the facts and procedure as are necessary to provide a framework for our grant in part and denial in part of a COA.

Maldonado, a Mexican national, was tried and convicted of capital murder in Texas state court in 1997 for the November 1995 robbery and murder of Cruz Saucedo. Maldonado filed an automatic direct appeal of his conviction with the Texas Court of Criminal Appeals (TCCA), which affirmed his conviction and sentence after considering his points of error on the merits. *See Maldonado v. State*, 998 S.W.2d 239 (Tex. Crim. App. 1999). While that appeal was pending, he filed his first application for a writ of habeas corpus. The state habeas trial court concluded that several of Maldonado's claims—including a claim that the State's failure to inform Maldonado of his rights under the Vienna Convention on Consular Relations, Apr. 24, 1963, 21 U.S.T. 77, caused him to make an involuntary confession—were procedurally barred under the contemporaneous objection rule. The state habeas trial court also found that all of the claims raised in that application failed on the merits. The TCCA adopted the state habeas trial court's findings of fact and conclusions of law in their entirety and

2

No. 10-70003

denied the application. *Ex parte Maldonado*, No. 51,612-01 (Tex. Crim. App. 2002).

Maldonado then filed a federal habeas petition, which included several claims that he had not presented to the state courts. *See Maldonado v. Cockrell*, No. H-03-CV-811 (S.D. Tex.). The district court dismissed the petition without prejudice to allow Maldonado to exhaust state remedies.

Accordingly, Maldonado filed a subsequent state habeas application in the TCCA. *Ex parte Maldonado*, No. 51,612-02 (Tex. Crim. App.). In this habeas application, Maldonado claimed that he was mentally retarded and therefore ineligible for the death penalty under *Atkins*; that he was deprived of his Fifth Amendment right to counsel when the police interrogated him and obtained a confession without counsel present; and that he was deprived of his Sixth Amendment right to counsel when trial counsel rendered ineffective assistance at both the guilt/innocence and punishment phases. The TCCA remanded the *Atkins* claim to the state habeas trial court to enter findings of fact and conclusions of law, but summarily dismissed the Fifth and Sixth Amendment allegations "as an abuse of the writ" under Texas Code of Criminal Procedure article 11.071, § 5(a). *Ex parte Maldonado*, No. 51,612-02 (Tex. Crim. App. Mar. 2, 2003).

While Maldonado's *Atkins* claim was pending before the state habeas trial court, he filed a second subsequent state habeas application, contending that the State's failure to inform him of his rights under the Vienna Convention prevented him from marshaling additional mitigating evidence during the punishment phase of his trial. *Ex parte Maldonado*, No. 51,612-03 (Tex. Crim. App.).

The state habeas trial court, after holding a live evidentiary hearing, entered findings of fact and conclusions of law recommending that relief be denied on Maldonado's *Atkins* claim. The TCCA addressed the *Atkins* issue from

No. 10-70003

Maldonado's first subsequent habeas application and the Vienna Convention claim from Maldonado's second subsequent habeas application in a joint order. The TCCA adopted the state habeas trial court's findings of fact and conclusions of law on the *Atkins* issue and denied relief. It also concluded that the Vienna Convention claim "failed to meet one of the exceptions provided for" under article 11.071, § 5(a), and accordingly denied Maldonado's second subsequent habeas application. *See Ex parte Maldonado*, Nos. 51,612-02, 51,612-03, 2007 WL 2660292, at *1 (Tex. Crim. App. Sept. 12, 2007).

Maldonado then returned to federal district court with an amended habeas petition. The district court granted summary judgment to the State, dismissed Maldonado's petition, and *sua sponte* denied a COA as to all issues. Maldonado now seeks as COA as to whether he is mentally retarded under *Atkins*. He also seeks a COA as to the district court's conclusions that his Vienna Convention and Fifth and Sixth Amendment claims are procedurally defaulted and fail on the merits. We address each of these issues below.

## II. STANDARDS OF REVIEW

Maldonado's motion is governed by the applicable provisions of AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 335–36 (1997). Under AEDPA, a state habeas petitioner may appeal a district court's dismissal of his petition only if the district court or the court of appeals first issues a COA. 28 U.S.C. § 2253(c)(1)(A); *see also Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003) (describing a COA as a "jurisdictional prerequisite" without which "federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners"). In determining whether to grant a petitioner's application for a COA, we limit our "examination to a threshold inquiry into the underlying merit of [the petitioner's] claims." *Miller–El*, 537 U.S. at 327 (citing *Slack v. McDaniel*, 529 U.S. 473, 481 (2000)). "This threshold inquiry does not require full

4

consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it." *Id*. at 336.

We will grant an application for a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to grant a COA for one of Maldonado's substantive claims, we must conclude only that he has demonstrated the threshold showing for that substantive claim. *See Miller–El*, 537 U.S. at 327. "Although the issuance of a COA 'must not be *pro forma* or a matter of course,' the petitioner satisfies the burden under § 2253(c) 'by demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005) (alteration in original) (quoting *Miller–El*, 537 U.S. at 337–38). "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Miller–El*, 537 U.S. at 338. "[A]ny doubt as to whether a COA should issue in a death-penalty case must be resolved in favor of the petitioner." *Pippin*, 434 F.3d at 787.

In determining whether the district court's denial of Maldonado's application for a COA on his claims was debatable, we must keep in mind the deferential standard of review that AEDPA requires a district court to apply to the state court's rulings. *See Brown v. Dretke*, 419 F.3d 365, 371 (5th Cir. 2005) ("With respect to the review of factual findings, AEDPA significantly restricts the scope of federal habeas review."). Under AEDPA,

> a federal court is not to grant a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings" unless it determines that the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

No. 10-70003

*Pippin*, 434 F.3d at 787 (quoting 28 U.S.C. § 2254(d)(1)).    Moreover, a "'determination of a factual issue made by a State court shall be presumed to be correct' unless the petitioner rebuts the presumption 'by clear and convincing evidence.'"    *Id*. at 788 (quoting 28 U.S.C. § 2254(e)(1)).    "This presumption of correctness attaches not only to explicit findings of fact, but also to 'unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.'"    *Id*. (quoting *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003)).

## III.    ANALYSIS

Maldonado seeks a COA as to whether he is a mentally retarded offender whose execution is barred under *Atkins*.  Maldonado also seeks a COA as to the district court's conclusions that his claims relating to the Vienna Convention and the Fifth and Sixth Amendments were procedurally defaulted and failed on the merits.  Each of these issues is discussed below.

### A.    The *Atkins* Claim

Maldonado seeks a COA as to whether he is mentally retarded and therefore ineligible for execution under *Atkins*.  Maldonado argues that the district court's conclusion to the contrary is at least debatable because that conclusion relied, in part, on the testimony of the State's expert witness, Dr. George Denkowski, who evaluated Maldonado in 2005 in connection with his state habeas application.

Dr. Denkowski's methodology and credibility are currently a subject of scrutiny in Texas.  In another habeas case, *Ex parte Plata*, No. AP-75820, 2008 WL 151296, at *1 (Tex. Crim. App. Jan. 16, 2008), the TCCA accepted the state habeas trial court's recommendation that Dr. Denkowski's testimony not be credited, due to what the state habeas trial court found were pervasive errors in Denkowski's administration and scoring of Plata's IQ and adaptive deficit tests. *See id.; Ex parte Plata*, No. 693143-B (Tex. 351st Dist. Sept. 28, 2007).  The

6

Texas State Board of Examiners of Psychologists subsequently filed a complaint against Dr. Denkowski with the State Office of Administrative Hearings (SOAH), attaching the state habeas trial court's findings in *Plata* and seeking to sanction him for intentionally misapplying psychiatric testing methods in that case. *See* SOAH Docket No. 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. The Board's complaint also alleges that Dr. Denkowski similarly "intentionally misused or abused psychological testing . . . in connection with [his] forensic assessments of . . . Maldonado." Proceedings before the SOAH are pending.

The district court was aware of the allegations and proceedings against Dr. Denkowski but held, after extensively considering Dr. Denkowski's testimony and the testimony of Maldonado's experts, that the state habeas court was not unreasonable in concluding that Maldonado had not met his burden of establishing mental retardation. *See Maldonado v. Thaler*, 662 F. Supp. 2d at 702–735.

Maldonado argues that Dr. Denkowski's performance was deficient in the following respects:

1.  As in *Plata*, Dr. Denkowski improperly applied "cultural factors" to raise Maldonado's raw IQ score;

2.  Dr. Denkowski failed to take the "Flynn Effect" into account when calculating Maldonado's IQ score;

3.  As in *Plata*, Dr. Denkowski applied "idiosyncratic" protocols to raise Maldonado's adaptive deficit score, improperly adjusting the score upward to account for ethnic, social, and cultural factors;

4.  Dr. Denkowski improperly relied on a translator, who lacked prior experience in psychology or psychological test-taking, to administer Maldonado's IQ and adaptive deficit tests.

Maldonado contends that the state habeas court's finding that he had not met his burden of proving mental retardation relied "almost entirely" on Dr. Denkowski's testimony, and argues that the district court, in assessing the

reasonableness of the state habeas court's finding, improperly discounted the deficiencies in that testimony.

This is not the first case in which we have been asked to consider whether the issues cited in *Plata* rendered a district court's decision based in part upon Dr. Denkowski's testimony debatable or wrong. In *Pierce v. Thaler*, 355 F. App'x 784 (5th Cir. 2009) (per curiam), we concluded, after considering similar contentions as to Dr. Denkowski's testimony and the weight that testimony carried in the state habeas court's decision, that "[t]he district court arguably erred in concluding that none of these issues merited habeas relief." *Id*. at 794. As we did in *Pierce*, we grant a COA as to Maldonado's *Atkins* claim.

## B.    The Vienna Convention Claims

Maldonado also seeks a COA relating to his Vienna Convention claims. He alleged in his initial state habeas application that the State's failure to notify him of his rights under the Vienna Convention harmed him during interrogation because without counsel (which the Mexican consulate could have supplied) he provided an involuntary confession. He alleged in his second subsequent state habeas application that the State's failure prevented him from marshaling mitigating evidence for the punishment phase of trial. The district concluded that both issues were procedurally defaulted, and that even if not, these claims failed on the merits because there was no clearly-established Supreme Court law establishing that the Vienna Convention creates individually enforceable rights.

We need not address the district court's procedural default conclusions because its conclusion as to the merits is obviously correct. As the district court recognized, and Maldonado does not dispute, the Supreme Court has not yet decided whether the Vienna Convention creates rights enforceable by individuals. *See, e.g., Medellín v. Texas*, 552 U.S. 491, 506 n.4 (2008) (declining to decide whether the Vienna Convention creates individually enforceable rights). Under AEDPA, we may only disturb a state court judgment if it was

"contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). Furthermore, this court has affirmatively concluded that the Vienna Convention "does not create an individually enforceable right." *Leal Garcia v. Quarterman*, 573 F.3d 214, 218 n.19 (5th Cir. 2009) (internal quotation marks omitted). Because the Court has not yet decided whether an individually enforceable right exists, and because we are bound by our circuit precedent, the district court's conclusion that Maldonado cannot seek to enforce such a right under AEDPA is not debatable or wrong. Maldonado's application for a COA on his Vienna Convention claims is denied.

## C.    The Fifth and Sixth Amendment Claims

Maldonado also seeks a COA as to his claims that he was denied his Fifth Amendment right to counsel during interrogation and that he was denied his Sixth Amendment right to effective assistance of counsel. The TCCA concluded, succinctly, that these claims, which were raised in his first subsequent habeas application, should be dismissed under Texas's abuse of the writ statute, Texas Code of Criminal Procedure article 11.071, § 5(a). The TCCA ordered:

> Remand to the trial court under Article 11.071, Sec. 5(a), V.A.C.C.P. ([*Atkins* claim] only) and dismiss [the Fifth and Sixth Amendment allegations] as an abuse of the writ.

*Ex parte Maldonado*, No. 51,612-02 (Tex. Crim. App. Mar. 3, 2003). The district court concluded that these claims were procedurally defaulted because they were dismissed on adequate and independent state procedural grounds. It concluded in the alternative that these claims failed on the merits. *Maldonado v. Thaler*, 622 F. Supp. 2d at 737, 743–46, 749–50. Maldonado contends that the district court's conclusion as to procedural default is debatable because the TCCA's basis for dismissal was not clear.

No. 10-70003

We review de novo the district court's conclusion that a claim is procedurally defaulted. *Kittelson v. Dretke*, 426 F.3d 306, 315 (5th Cir. 2005) (per curiam). A federal habeas claim is procedurally defaulted when the state court has based its rejection of the claim on a state procedural rule that provides an adequate basis for relief, independent of the merits of the claim. *Coleman v. Thompson*, 501 U.S. 722, 729–32 (1991). The adequate and independent state procedural basis must be clear. Where, by contrast, the decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law," or where "the adequacy and independence of any possible state law ground is not clear from the face of the [state court] opinion," we must apply the presumption that "the state court decided the case the way it did because it believed that federal law required it to do so." *Id.* at 733 (internal quotation marks omitted).

The Texas abuse of the writ statute, article 11.071, § 5(a), provides, in relevant part, that the TCCA may not consider a subsequent habeas application unless a petitioner can show that the application meets one of three statutory exceptions:

> (a) If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:
>
> > (1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article . . . because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;
> >
> > (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or
> >
> > (3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have

10

No. 10-70003

> answered in the state's favor one or more of the special issues
> that were submitted to the jury in the applicant's trial . . . .

TEX. CODE CRIM. PROC. ANN. art. 11.071.  The TCCA subsequently has held that to meet the exception under § 5(a)(1), "1) the factual or legal basis for an applicant's current claims must have been unavailable as to all of his previous applications; and 2) the specific facts alleged, if established, would constitute a constitutional violation that would likely require relief from either the conviction or sentence." *Ex parte Campbell*, 226 S.W.3d 418, 421 (Tex. Crim. App. 2007).

Maldonado argues that because the TCCA dismissed his application without specifying whether it was doing so because the claims were not previously unavailable (state procedural default) or because the facts alleged could not constitute a constitutional violation that would likely require relief (federal merits), we must presume that dismissal was premised on the merits. In support, he cites *Ruiz v. Quarterman*, 504 F.3d 523 (5th Cir. 2007), in which we concluded that no adequate and independent state procedural basis for dismissal could be discerned from the TCCA's "boilerplate" dismissal under § 5(a). *Ruiz*, however, is distinguishable. There, it was plain that an assessment of the merits played a significant role in the dismissal. One TCCA panelist filed a concurring opinion concluding that Ruiz did not allege a meritorious Sixth Amendment claim. Two other panelists filed a dissent from the dismissal, urging the merits of the Sixth Amendment claim. *Id.* at 528.

As the district court recognized, the facts of this case are much more like those that we addressed in *Hughes v. Quarterman*, 530 F.3d 336 (5th Cir. 2008), where, as here, the TCCA dismissed under § 5(a) without specifying the basis for dismissal. We concluded that an adequate and independent state procedural basis for dismissal was evident because it was plain that the factual and legal bases for the petitioner's claims were available well before he filed his subsequent habeas application, and because there was "nothing in [the TCCA's

11

perfunctory dismissal of the claims that suggest[ed] that it actually considered or ruled on the merits." *Id*. at 342.  Maldonado has never, in this court or before the district court, contended that the factual or legal bases for these Fifth and Sixth Amendment claims were unavailable when he filed his initial habeas petition, and there is no basis in the record to conclude that they were.  *See Maldonado v. Thaler*, 662 F. Supp. at 745 ("[T]he factual basis for Maldonado's barred claims were obviously available well before he filed his successive state habeas proceeding.").  Nor has Maldonado asserted that he could meet the heightened merits thresholds imposed by the exceptions in §§ 5(a)(2), (3).  And there is no basis in the TCCA's terse dismissal to infer that the court considered or ruled on the federal merits.

Accordingly, we conclude that the dismissal of Maldonado's subsequent habeas application was premised on an adequate and independent state procedural ground.  *Cf. Coleman*, 501 U.S. at 737, 739–40 ("In those cases in which it does not fairly appear that the state court rested its decision primarily on federal grounds, it is simply not true that the 'most reasonable explanation' is that the state judgment rested on federal grounds."  "In the absence of a clear indication that a state court rested its decision on federal law, a federal court's task will not be difficult.").  Maldonado's application for a COA on these issues is denied.

## IV.    CONCLUSION

For the reasons discussed above, we GRANT Maldonado's application for a COA on the issue of whether he is mentally retarded, rendering him ineligible for the death penalty under *Atkins*.  The parties are directed to submit supplemental briefing on this issue in advance of oral argument on a schedule to be established by the Clerk.  Maldonado's application for a COA as to all other claims is DENIED.