# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 3, 2013

Lyle W. Cayce
Clerk

No. 10-70016

JOHN REYES MATAMOROS,

Petitioner - Appellant,

v.

WILLIAM STEPHENS, Director, Texas Department of Criminal Justice, Correctional Institutions Division,

Respondent - Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:07-CV-2613

Before JOLLY, DAVIS, and ELROD, Circuit Judges.

PER CURIAM:[*]

In 1992, a Texas jury found John Reyes Matamoros guilty of capital murder, and the trial court sentenced him to death. The Texas Court of Criminal Appeals (TCCA) affirmed Matamoros's conviction and sentence on direct appeal. A federal district court denied habeas relief and *sua sponte* denied a certificate of appealability (COA). Matamoros now urges us to grant a COA on two claims: (1) that he is mentally retarded and thus ineligible for the death penalty under *Atkins v. Virginia*, 536 U.S. 304 (2002), and (2) that the jury

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-70016

instructions at the sentencing phase of his trial were unconstitutional under *Penry v. Johnson*, 532 U.S. 782 (2001). Matamoros also moves to remand his *Atkins* claim to the district court. For the reasons explained below, we GRANT Matamoros's request for a COA on his *Atkins* claim, but DENY both his request for a COA on the *Penry* claim and his motion for remand.

I.

The district court's comprehensive opinion recounts the factual background and procedural development of this case. *See Matamoros v. Thaler*, No. H-07-2613, 2010 WL 1404368, at *1–3 (S.D. Tex. Mar. 31, 2010). We recite only the factual and procedural history necessary to our analysis.

In November 1992, Matamoros stood trial for the capital murder[1] of his neighbor, Eddie Goebel, in the 180th Judicial District for Harris County, Texas. The jury found Matamoros guilty and answered affirmatively to the punishment issues submitted under Article 37.071 of the Texas Code of Criminal Procedure. Accordingly, the trial court sentenced Matamoros to death. The TCCA affirmed Matamoros's conviction and sentence on direct appeal. *See Matamoros v. State*, 901 S.W.2d 470 (Tex. Crim. App. 1995).

Matamoros filed his initial state application for a writ of habeas corpus on April 23, 1997, challenging the validity of his conviction and sentence. The TCCA denied the application. *Ex Parte Matamoros*, No. 50,791-01 (Tex. Crim. App. Dec. 5, 2001). Matamoros filed his initial federal habeas petition on July

---

[1] At the time of Goebel's death, a person committed capital murder in Texas when he "intentionally commit[ted] the murder in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, or arson." Tex. Penal Code Ann. § 19.03(a)(2) (West 1974). What was capital murder then is capital murder now. *See* Tex. Penal Code Ann. § 19.03(a)(2) (West 2011).

No. 10-70016

5, 2002. Matamoros then moved to stay those proceedings so that he could return to state court and exhaust a claim that he is ineligible for the death penalty under *Atkins* because he is mentally retarded. The district court granted the motion.

The TCCA received Matamoros's successive state habeas application on October 27, 2003, and remanded the action for the trial court to address the merits of the *Atkins* claim. *Ex Parte Matamoros*, No. 50,791-02, 2007 WL 1707193, at *1 (Tex. Crim. App. June 13, 2007). After an evidentiary hearing in 2006, the trial court entered written findings of fact and conclusions of law recommending that the TCCA deny relief. *Id.* The TCCA rejected the finding that Matamoros had not shown by a preponderance of the evidence that he fails to meet the first criterion for mental retardation—i.e., significant sub-average general intellectual functioning. *Id.* Nevertheless, the TCCA denied Matamoros's petition because it determined that he had failed to demonstrate by a preponderance of the evidence that he satisfies the other two criteria for mental retardation—i.e., sufficient deficiencies in adaptive functioning and the onset of mental retardation before the age of eighteen. *Id.* Accordingly, the TCCA denied Matamoros's petition.

Matamoros then returned to federal district court and, on July 10, 2007, filed the habeas petition that gives rise to the pending request for a COA. Matamoros asserted that he is ineligible for the death penalty because (1) he is mentally retarded, (2) the jury instructions used during the sentencing phase of his trial were unconstitutional, (3) he received ineffective assistance of counsel, and (4) the Texas capital sentencing scheme is unconstitutional. *See Matamoros*, 2010 WL 1404368, at *4. The district court granted summary judgment to the

3

No. 10-70016

state and dismissed the petition. *Id.* at \*23. The district court also *sua sponte* denied a COA as to all issues. *Id.* at \*22–23.

On July 22, 2010, Matamoros filed in this court a request for a COA on only the issues of mental retardation and the jury instructions. The state opposed the motion. While the COA motion was pending, Matamoros moved to stay the proceeding so that he could return to state court to present newly available and unexhausted evidence in support of his *Atkins* claim. Specifically, Matamoros sought to present evidence regarding Dr. George Denkowski, the psychologist who testified as an expert for the state at the 2006 hearing on Matamoros's *Atkins* claim. *See Matamoros*, 2010 WL 1404368, at \*9–10, 14–15. In April 2011, Denkowski entered into a Settlement Agreement with the Texas State Board of Examiners of Psychologists, in which his license was "reprimanded." Pursuant to the Settlement Agreement, Denkowski agreed to "not accept any engagement to perform forensic psychological services in the evaluation of subjects for mental retardation or intellectual disability in criminal proceedings." We granted Matamoros's motion to stay the proceedings.

Following the stay in this court, the TCCA exercised its authority to reconsider the initial disposition of Matamoros's writ. *Ex Parte Matamoros*, No. 50,791-02, 2011 WL 6241295, at \*1 (Tex. Crim. App. Dec. 14, 2011). The TCCA first remanded the cause to the trial court "to allow it the opportunity to re-evaluate its initial findings, conclusions, and recommendation in light of the Denkowski Settlement Agreement." *Id.* The TCCA stated that the trial court could "order affidavits or hold a live hearing if warranted." *Id.* Matamoros tendered new affidavits to the trial court, including an affidavit from Dr. Thomas Oakland, and requested a hearing. On March 30, 2012, without ruling on or

No. 10-70016

discussing Matamoros's affidavits or request, the trial court signed an order adopting the state's Amended Proposed Findings of Fact and Conclusions of Law, which recommended that relief be denied. The trial court announced that it had totally discounted "anything in the records provided by Dr. George Denkowski in this matter." *Ex Parte Matamoros*, Nos. 50,791-02 & 50,791-03, 2012 WL 4713563, at *3 (Tex. Crim. App. Oct. 3, 2012) (Price, J., dissenting). Yet, in the order, the trial court continued to partially rely on records and evidence provided by Denkowski.[2] Nevertheless, consistent with the trial court's findings and conclusions, the TCCA again denied Matamoros's writ application. *Id.* at *1.

Two TCCA judges dissented. *Id.* at *2–5  (Price, J., joined by Johnson, J.). The dissent contended that Matamoros "has made a fairly compelling showing of mental retardation." *Id.* at *3.  The dissent further observed:

> Given Denkowski's settlement agreement, and the substantial criticisms of his diagnostic methodology, as evidenced by the affidavits [Matamoros] has lately tendered, questions abound. For example, even taking Denkowski's testimony out of the mix, is it appropriate for this Court—the ultimate arbiter of [Matamoros's] mental retardation—to rely on the TYC records as evidence that the applicant suffers no adaptive deficits outside the realm of functional academics, considering (as the convicting court apparently did not) Dr. Oakland's criticisms?

*Id.* at *5.

Matamoros has returned to this court with a motion to lift the stay and to remand to the district court for it "to reconsider [his] *Atkins* claim *de novo* without taking into account or in any respect relying on Dr. Denkowski's

---

[2] For example, amended finding nos. 88 and 90 appear to have been drawn from testimony provided by Denkowski at the 2006 hearing. More generally, amended finding nos. 75–90, regarding adaptive functioning, continued to rely heavily on records from the Texas Youth Commission (TYC)—records on which Denkowski relied at the 2006 hearing. The trial court did not address Dr. Oakland's criticism of Denkowski's reliance on the TYC records.

## No. 10-70016

analysis." This court granted the motion to lift the stay and entered an order carrying the motion for remand with the request for a COA.

### II.

The Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, governs our consideration of Matamoros's motion and request for a COA. Under AEDPA, a state habeas petitioner must obtain a COA before he can appeal the federal district court's denial of habeas relief. 28 U.S.C. § 2253(c)(1)(A); *see Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (describing a COA as a "jurisdictional prerequisite" without which "federal courts of appeals lack jurisdiction to rule on the merits of the appeals from habeas petitioners"). A COA is warranted upon a "substantial showing of the denial of a constitutional right." § 2253(c)(2). A petitioner satisfies this standard if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).[3] The issue is "the debatability of the underlying constitutional claim, not the resolution of the debate." *Miller-El*, 537 U.S. at 342; *see id.* at 338 ("[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail."). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it." *Id.* at 336. In cases involving the death penalty, "any doubts as to whether a COA should issue must be resolved in [the petitioner's] favor." *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000).

We evaluate the debatability of Matamoros's constitutional claims through

---

[3] To obtain a COA when the district court has denied relief on procedural grounds, a petitioner must show both that the claim is debatable on the merits *and* that the district court's procedural ruling is debatable. *See Slack*, 529 U.S. at 484–85.

No. 10-70016

the lens of AEDPA's highly deferential standard, which "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (internal quotation marks omitted). We defer to the state trial court's factual findings, *Moody v. Quarterman*, 476 F.3d 260, 267–68 (5th Cir. 2007), and consider only the record that was before the state court, *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). We review "only the ultimate legal determination by the state court—not every link in its reasoning." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc).

Under AEDPA, a federal court may not grant habeas relief unless the petitioner has first exhausted state remedies with respect to the claim at issue. § 2254(b). To prevail, the habeas petitioner must prove that the state court's constitutional adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(1)–(2). Clearly established federal law is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state-court decision is contrary to clearly established federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413. A state-court decision fails the "unreasonable application" prong if it "correctly identifies the governing legal rule [from the Supreme Court's cases] but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08.

7

No. 10-70016

III.

Matamoros seeks either a COA on whether he is a mentally retarded offender whose execution is unconstitutional under *Atkins* or a remand to the district court for a hearing on this *Atkins* claim.  Matamoros also seeks a COA as to whether the jury instructions violated *Penry* by precluding the jury from giving full effect to his mitigating evidence.  We address each issue in turn, ultimately granting a COA on the *Atkins* claim, but denying Matamoros's motion for remand and denying a COA on the *Penry* claim.

A.

With respect to his *Atkins* claim, Matamoros filed both a request for a COA and a motion for remand to the district court.  We address these filings separately, beginning with his request for a COA.

1.

Matamoros advances a two-part argument regarding his *Atkins* claim. First, he contends that the state court's finding that he is not mentally retarded was unreasonable because it is based on the 1992 American Association for Mental Retardation (AAMR) definition of mental retardation, not the updated 2002 definition.  The district court rejected this argument.

Reasonable jurists would not debate the district court's decision regarding the AAMR definitions.  *Atkins* does not mandate that a state adopt any particular clinical definition of mental retardation.  *See Atkins*, 536 U.S. at 317 (leaving "to the State[s] the task of developing ways to enforce the constitutional restriction upon [their] execution of sentences" (alterations in original) (footnote omitted) (quoting *Ford v. Wainwright*, 477 U.S. 399, 416–17 (1986))); *see Clark v. Quarterman*, 457 F.3d 441, 445 (5th Cir. 2006) ("Although the [*Atkins*] Court did refer to the clinical definitions of mental retardation promulgated by the AAMR and the [American Psychological Association], it did not dictate that the

No. 10-70016

approach and analysis of the State must track the AAMR or the APA exactly."). Moreover, this court recently held that, for purposes of *Atkins*, Texas need not follow AAMR procedures when determining whether a prisoner is mentally retarded. *Chester v. Thaler*, 666 F.3d 340, 347 (5th Cir. 2011), *cert. denied*, 133 S. Ct. 525 (2012). Therefore, reasonable jurists would not debate the district court's conclusion regarding the state court's use of the 1992 AAMR definition for mental retardation. To the extent that Matamoros's request for a COA relies on this specific argument, he has not cast any doubt that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. *See* § 2254(d)(1).

Matamoros advances a second argument in his request for a COA on the *Atkins* claim. Matamoros challenges the state court's "mistaken reliance" on Denkowski's testimony and methodology. This is not the first time Denkowski's methodology and credibility have come under scrutiny. In *Ex Parte Plata*, No. AP-75820, 2008 WL 151296, at *1 (Tex. Crim. App. Jan. 16, 2008), the TCCA accepted the state habeas trial court's recommendation that Denkowski's testimony not be credited, due to what the trial court found were pervasive errors in Denkowski's administration and scoring of the prisoner's IQ and adaptive deficit tests. *See id.*; *Ex Parte Plata*, No. 693143-B (Tex. 351st Dist. Ct., Harris County, Sept. 28, 2007). Furthermore, our court has at least twice before granted COAs on *Atkins* claims involving Denkowski's testimony and methodology. *See Maldonado v. Thaler*, 389 F. App'x 399, 403–04 (5th Cir. 2010); *Pierce v. Thaler*, 355 F. App'x 784, 794–95 (5th Cir. 2009).

When we granted COAs in *Maldonado* and *Pierce*, the Texas State Board of Examiners of Psychologists' complaint against Denkowski was unresolved. While Matamoros's COA request was pending, Denkowski entered into the Settlement Agreement, which formally "reprimanded" his license and prohibits

him from "accept[ing] any engagement to perform forensic psychological services in the evaluation of subjects for mental retardation or intellectual disability in criminal proceedings." We granted Matamoros's motion to stay the proceeding in this court while he presented evidence of the Settlement Agreement to the state courts. As noted above, a majority of the TCCA agreed with the trial court's recommended findings and conclusions and denied the application. *See Ex Parte Matamoros*, 2012 WL 4713563, at \*1. But Judges Price and Johnson dissented. In his dissenting opinion, Judge Price, joined by Judge Johnson, referred to affidavits that Matamoros filed with the state trial court, including the affidavit of Dr. Oakland, a psychologist and co-author of the Adaptive Behavior Assessment System (ABAS).[4] *Id.* at \*3–5. The dissent noted that the trial court's amended findings and conclusions failed to address Dr. Oakland's criticisms of relying on certain types of information to assess Matamoros's adaptive functioning, such as records from the TYC. *Id.* at \*4–5. The dissent further opined that "even taking Denkowski's testimony out of the mix," the Settlement Agreement and Dr. Oakland's affidavit raise important questions about whether it is appropriate for the state courts "to rely on the TYC records as evidence that [Matamoros] suffers no adaptive deficits outside the realm of functional academics." *Id.* at \*5. Moreover, the trial court's amended findings continued to include references to Denkowski's testimony, albeit without explicitly invoking his name.

It is against this backdrop that we must decide whether reasonable jurists could debate the district court's conclusion that the state court's rejection of Matamoros's *Atkins* claim was reasonable. *See Blue v. Thaler*, 665 F.3d 647, 661

---

[4] The dissent also referred to a signed but unsworn affidavit from Dr. Jack M. Fletcher, a psychology professor, which Matamoros proffered to the state court. *Ex Parte Matamoros*, 2012 WL 4713563, at \*4.

No. 10-70016

(5th Cir. 2011). We conclude that Matamoros has met this "threshold" showing. *See Miller-El*, 537 U.S. at 336, 338. It is consistent with prior cases involving Denkowski's methodology to grant a COA in this case so that we may give "full consideration [to] the factual [and] legal bases adduced in support of [Matamoros's] claim."[5] *See Miller-El*, 537 U.S. at 336; *see also Maldonado*, 389 F. App'x at 403–04; *Pierce*, 355 F. App'x at 794–95. Accordingly, we grant Matamoros's request for a COA with respect to his *Atkins* claim.

2.

The thrust of Matamoros's motion for remand is that the district court should have an opportunity to reach a different conclusion on the *Atkins* claim in light of the subsequent state court proceedings regarding Denkowski. But whether the district court would reach a different conclusion in light of the now-supplemented state court record is irrelevant. Under AEDPA, it is the state trial court's factual findings to which we must defer if reasonable, not the district court's. *See Pinholster*, 131 S. Ct. at 1398 (explaining that under AEDPA we consider only the record that was before the state court); *Moody*, 476 F.3d at 267–68 (recognizing that AEDPA requires us to defer to the state trial court's

---

[5] The state asserts that Denkowski's methodology is beside the point because the district court concluded that "[e]ven if Denkowski's opinion is disregarded, . . . the state court's conclusion was reasonable." 2010 WL 1404368, at *15. The state further asserts that the state court's amended findings of fact determined that "any criticism or discussion of Denkowski's methodology concerning adaptive behavior testing in [Matamoros's] case" is "irrelevant." For two reasons these statements do not convince us that we should deny Matamoros's request for a COA on his *Atkins* claim. First, Matamoros correctly points out that even though the state court ostensibly found any discussion of Denkowski's methodology "irrelevant," some of the court's amended findings regarding Matamoros's adaptive functioning continue to include citations to Denkowski's testimony. Second, we are mindful that "the statute forbids" us from fully considering the factual and legal bases in support of Matamoros's *Atkins* claim as part of the "threshold inquiry" regarding his request for a COA. *Miller-El*, 537 U.S. at 336; *see also id.* at 338 ("[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.").

No. 10-70016

factual findings).  Therefore, remanding this case to the district court to allow it to make new findings would serve no meaningful purpose.  We deny Matamoros's motion for remand.

## B.

Matamoros also contends that the jury instructions at the sentencing phase of his trial were unconstitutional.  *See Penry v. Johnson*, 532 U.S. 782 (2001) ("*Penry II*"); *Penry v. Lynaugh*, 492 U.S. 302 (1989) ("*Penry I*"); *see also Smith v. Texas*, 550 U.S. 297 (2007); *Brewer v. Quarterman*, 550 U.S. 286 (2007).  Although the district court found that the jury instructions "plainly violat[ed]" *Penry II*, it denied Matamoros's claim for habeas relief on procedural grounds, concluding that Matamoros had not exhausted this claim in state court. *See Matamoros*, 2010 WL 1404368, at *17–18.  Because the district court denied relief on procedural grounds, Matamoros must show that the district court's procedural ruling is debatable.  *See Slack*, 529 U.S. at 484–85.

AEDPA prohibits a federal court from granting a writ of habeas corpus unless: "(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(I) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1).  Here, Matamoros raised his claim based on *Penry II* for the first time in his federal habeas petition.  Although Matamoros included evidence regarding potential mitigating factors in his state court habeas application, he argued only that the jury instructions violated his rights under *Penry I*.[6]  *See Matamoros*, 2010 WL 1404368, at *17.  Because Matamoros failed to raise his *Penry II* claim before the Texas courts, reasonable

---

[6] Moreover, Matamoros does not argue that there is an absence of a corrective process in Texas or that any such process is ineffective.

jurists would not debate the district court's decision to dismiss the claim on procedural grounds.

Furthermore, as the district court explained, Matamoros's failure to exhaust requires a dismissal with prejudice because Texas law would bar Matamoros's unexhausted *Penry II* claim as an abuse of writ. A procedural bar for habeas review occurs when the court to which a petitioner must present his claims to satisfy the exhaustion requirement would find the unexhausted claims procedurally barred. *Id.* at *18 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)). Texas prohibits successive writs challenging the same conviction except where:

> (1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;
>
> (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or
>
> (3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under 37.071, 37.0711, or 37.072.

Tex. Code. Crim. Proc. art. 11.071. Because Matamoros's *Penry II* claim was available when he originally filed his writ, he cannot show that reasonable jurists would debate the district court's procedural conclusion. *See Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995) (stating that "the highest court of the State of Texas announced that it would as a rule dismiss as abuse of the writ an applicant for a subsequent writ of habeas corpus rais[ing] issues that existed

No. 10-70016

at the time of his first writ" (alteration in original) (internal quotation marks omitted)).

## IV.

For the reasons above, we GRANT Matamoros's application for a COA on whether he is ineligible for the death penalty because he mentally retarded. We DENY Matamoros's motion for remand to the district court and DENY his request for a COA based on the jury instructions.